UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARTHUR WILLIAMS                                      CIVIL ACTION

VERSUS                                                       NO. 25-575

DARRELL VANNOY, WARDEN                        SECTION: "O"(3)

## REPORT AND RECOMMENDATION

Arthur Williams, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

Williams was charged with aggravated second degree battery.[1] After a jury trial, Williams was found guilty as charged.[2] The State filed a habitual bill of information alleging Williams to be a fourth felony offender.[3] On March 9, 2020, the State amended the habitual bill of information to allege Williams to be a second felony offender.[4] On that same date, the trial court sentenced Williams as a second felony offender to a term of imprisonment of 24 years at hard labor.[5] The trial court denied Williams's motion to reconsider sentence.[6] The trial court later granted Williams's

---

[1] R. Doc. 9 at 14, Bill of Indictment, June 3, 2019.

[2] *Id.* at 337–582, Trial Transcript, 12/10/19; *id.* at 583–676, Trial Transcript, 12/11/19.

[3] *Id.* at 242–43, Multiple Offender Bill, 1/3/20.

[4] *Id.* at 268, Amended Multiple Offender Bill of Information, 3/9/20.

[5] *Id.* at 286, Sentencing Minutes, 3/9/20; *id.* at 313–36, Sentencing Transcript, 3/9/20 (misdated 4/25/19).

[6] *Id.* at 270–71, Motion to Reconsider Sentence Pursuant to Code of Criminal Procedure Article 881.1, 4/13/20.

motion to reconsider sentence, and ordered that Williams's sentence run concurrently with any other sentence he is serving.[7]

Williams, through counsel, filed a direct appeal to the Louisiana Fifth Circuit Court of Appeal alleging imposition of an illegally excessive sentence.[8] On April 28, 2021, the court affirmed Williams's conviction and sentence, but remanded the matter for correction of the uniform commitment order.[9] The Louisiana Supreme Court then denied Williams's related writ application without explanation on October 1, 2021.[10]

On August 4, 2022, Williams filed an application for post-conviction relief.[11] Williams alleged that: (1) defense counsel was ineffective in failing to request a sanity commission hearing; (2) defense counsel refused to allow Williams to testify in his own defense; and (3) he was subjected to vindictive prosecution.[12] The state district court denied relief on December 6, 2023.[13]

---

[7] R. Doc. 9-1 at 7–8, Order, 1/13/21; *id.* at 10–15, Hearing Transcript, 1/11/21.
[8] *See State v. Williams*, 347 So. 3d 1023, 1028 (La. App. 5th Cir. 2021); R. Doc. 9-1 at 24–25.
[9] *Williams*, 347 So. 3d 1023–30; R. Doc. 9-1 at 17–29.
[10] *State v. Williams*, 324 So. 3d 1059 (La. 2021).
[11] R. Doc. 9-1 at 42–61, Petition for Post Conviction Relief, 8/8/22 (signed 8/4/22). Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). The Court has simply used the signature date of the application as its filing date, in that the application was obviously placed in the prison mail system no earlier than the date on which it was signed. *See United States v. Minor*, 582 F. App'x 315, 316 (5th Cir. 2014); *Estes v. Boutté*, No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), *adopted*, 2020 WL 1984331 (E.D. La. Apr. 27, 2020).
[12] *Id.* at 48.
[13] *Id.* at 77–81, Judgment 12/6/23 (signed 12/5/23).

On April 10, 2024, the Louisiana Fifth Circuit Court of Appeal denied Williams's related writ application.[14] On November 6, 2024, the Louisiana Supreme Court denied Williams's related writ application, finding that he "fail[ed] to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2 d 674 (1984). As to his remaining claim, applicant fails to satisfy his post-conviction burden of proof. La. C. Cr. P. art. 930.2."[15]

## I.    Federal Petition

On March 21, 2025, Williams filed his petition for habeas corpus.[16] Williams claims that: (1) his counsel was ineffective in failing to request a sanity commission hearing; (2) his counsel was ineffective in failing to allow him to testify at trial; and (3) he was subjected to vindictive prosecution.[17]

The State asserts that the petition is untimely.[18] In the alternative, the State contends that Williams's claims are without merit.[19] Williams did not file a reply brief. For the following reasons, the Court declines to adopt the State's position that the petition is untimely and will therefore review the merits of the claims.

---

[14] *State v. Williams*, 386 So. 3d 1192 (La. App. 5th Cir. 2024); R. Doc. 9-1 at 124–31.
[15] *State v. Williams,* 395 So. 3d 863 (La. 2024); R. Doc. 9-1 at 231–32.
[16] R. Doc. 3.
[17] *Id.* at 14–17.
[18] R. Doc. 10; R. Doc. 10-1 at 3–4.
[19] *Id.* at 4–8.

## II.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, applies to Williams's petition filed in this Court on March 21, 2025.[20] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

## III.    Preliminary Review - Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., governs the filing date for this action because Williams filed his habeas petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA generally requires that a petitioner bring his

---

[20] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Here, the clerk of court initially docketed Williams's deficient petition on March 21, 2025, when it was received, and it was filed April 21, 2025, when the filing fee was paid. Williams's filings did not include a signature date, R. Docs. 1 at 15, 1-1 at 1, 1-2 at 27, however, they were received by the prison legal department on March 21, 2025. R. Doc. 1-1 at 1. The fact that Williams later paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final."[21] The United States Court of Appeals for the Fifth Circuit has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

---

[21] Title 28 U.S.C. § 2244(d) provides additional grounds, that do not apply here:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The State is correct that Williams's conviction became final on December 30, 2021, after the 90–day deadline had passed for filing a writ of certiorari with the U.S. Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999); U.S. Sup. Ct. R. 13. Under a plain reading of the statute, Williams then had one year within which to file his federal habeas petition. The AEDPA statute of limitations began to run on December 31, 2021. On August 4, 2022, when Williams filed his state post-conviction application, 216 days of untolled time for filing a federal petition had elapsed. The parties do not dispute that the AEDPA limitations period was then tolled until Williams's state post-conviction proceedings concluded when the Louisiana Supreme Court issued its writ denial on November 6, 2024. Then the AEDPA statute of limitations began to run again, and Williams had 149 days remaining within which to file his habeas petition.

The State argues that Johnson did not file his petition until 165 days later, on April 21, 2025, the date on which Williams paid the filing fee.[22] But "the timeliness of [petitioner's] petition for purposes of application of the effective date of the AEDPA depends, not on a fee payment, but on when [he] delivered his papers to prison authorities for filing." *Spotville*, 149 F.3d at 377. In this case, Williams delivered his habeas petition to prison authorities on March 21, 2025, and it was electronically filed the same day.[23] At that point, there were six days of the one-year statutory limitation period remaining.

---

[22] R. Doc. 10 at 2; R. Doc. 10-1 at 2–4.
[23] R. Doc. 1 at 16; R. Doc. 1-1 at 1.

Williams filed his habeas petition on March 21, 2025, within the AEDPA limitations period. Because the State does not allege that Williams's claims are unexhausted or procedurally barred, the Court will review the claims on the merits.

## IV. Facts

The Louisiana Fifth Circuit Court of Appeal summarized the testimony and facts established at trial as follows:

> On the evening of April 23, 2019, Monica Howard Walker returned home with defendant, her significant other at the time. Upon returning home, she sat on her bed and changed her clothes. Her cell phone then rang, but she did not answer it. She picked it up and placed it back down. When defendant asked who called her, she replied that it was no one. Defendant then asked for her phone, but she would not give him the phone. She testified that she told defendant, "it's somebody I just don't want to talk to," and he replied, "if you don' give me that phone I'm going to show you what I'm going to do." Defendant then retrieved a belt and "whacked" her hand for the first time. When defendant hit her again, she threw the cell phone to him but did not give him the passcode. After he hit her another time, she provided defendant with the passcode. Defendant then went through her messages and called people from her phone.
>
> Defendant continued to hit Ms. Walker with the belt again and again. Ms. Walker, crying, jumped in the corner between her bed and nightstand. Defendant picked up a pipe and accused her of cheating on him.[5] She denied cheating on him, and she told him that she was tired and wanted to get ready for bed. Defendant then hit her with the pipe on her fingers, breaking two of them. She begged him to stop, and she recalled defendant saying, "b*tch, take your lick." After he put the pipe down, defendant retrieved a clothes iron. He asked Ms. Walker to admit that she cheated on him, or he would burn her with the iron. She testified that after she denied cheating on defendant, he "came at [her] with the iron." Defendant took the iron and laid it on her arm.
>
> _____
> [5] Ms. Walker later explained that the pipe was the handle of a broom and that it was normally kept in the kitchen.
>
> Ms. Walker testified that she told defendant that she needed to go to the hospital, but he said that she was not going to a hospital. He also said, "I'm going to make sure you don't get out of here." After suffering the whole night with her injuries, she told defendant to bring her to his

mother's house. Defendant said that he would bring her to the hospital because he did not want his mother "fussing" at him. At the hospital, while defendant was looking down at his phone, Ms. Walker indicated to the triage nurse that defendant caused her injuries. The nurse alerted the emergency room staff about the situation. Ms. Walker stated that defendant played on his cell phone and acted like he did not do anything to her.

At trial, Ms. Walker testified that she previously had surgery on her fingers and another surgery was scheduled because her fingers were not healing correctly. She has pins and screws in both of her fingers and goes to therapy three times a week. She indicated that the iron print was still visible on her arm and that it was a constant reminder of what had happened to her. She confirmed that she told the police what occurred and that she provided permission to search her residence. Ms. Walker testified that previously, in February 2019, she went to the emergency room for treatment after defendant burned her with an iron. She did not tell the police at that time about the incident because she was scared. She denied attacking or causing injury to defendant on April 23, 2019. She later confirmed that she and defendant had physically fought previously.

Latoya Mason, a registered nurse in the emergency room at Ochsner–River Parishes, testified that Ms. Walker was her patient on April 24, 2019. She testified that Ms. Walker had a burn to her right forearm and that Ms. Walker's rings had to be cut off because her fingers were swollen. Another person was with Ms. Walker, who was identified as "her old man," and he kept his head down and played with his phone. Ms. Mason explained that she told Ms. Walker that she needed to collect a urine sample, and she took Ms. Walker into the bathroom. She then asked Ms. Walker if the individual in the room was abusing her, and Ms. Walker confirmed that such was the case. She informed Ms. Walker that she had to call the police.

Dr. Claude Craighead, an emergency room doctor at Ochsner–River Parishes, testified as an expert in general medicine. Dr. Craighead testified that he treated Ms. Walker, who had a broken finger, which caused the need for her ring to be cut off, a soft tissue contusion on the outside of her head, and a superficial second-degree burn on her right arm. He recalled Ms. Walker rating her pain as ten out of ten. He denied that Ms. Walker appeared intoxicated.

Deputy Benjamin Teekell with the St. John the Baptist Parish Sheriff's Office was dispatched to the emergency room at Ochsner–River Parishes

on April 24, 2019. Deputy Teekell explained that after he separated Ms. Walker from defendant, she told him that she had been beaten with a metal pipe, beaten with a belt with a metal buckle, and burned with an iron. He recalled observing several injuries on Ms. Walker. He testified that Ms. Walker said that defendant attacked her at their home. After Ms. Walker signed a consent to search form, they went to her residence at 169 West 5th Street in Reserve where a metal pipe, a belt with a metal buckle, and an iron were seized from the bedroom. He confirmed that a DNA search warrant was obtained for a buccal swab from defendant. Deputy Teekell testified that on April 24, 2019, he arrested defendant for aggravated second degree battery.

Deputy Jenni Estraca, a crime scene officer with the St. John the Baptist Parish Sheriff's Office, testified that she was dispatched to 169 West 5th Street in Reserve on April 24, 2019. She collected evidence from the residence, including a clothes iron, a belt, a pillowcase, and a metal pipe. On April 25, 2019, she collected a swab for DNA testing from the metal pipe, and she sent the evidence to the Louisiana State Police Crime Lab for further analysis. She processed the pipe and clothes iron for latent fingerprints, and she collected a buccal swab from defendant and Ms. Walker.

Elizabeth Hamilton, a DNA analyst at the Louisiana State Police Crime Lab, testified as an expert in the field of DNA analysis. She testified that she analyzed several items in this case, including a pillowcase, a swab from a metal pipe, two swabs from a clothes iron, and reference samples from defendant and the victim. She testified that the DNA profile obtained from the reference sample of Ms. Walker could not be excluded as the donor of the DNA profile obtained from the swab of the suspected blood taken from the pillowcase. She testified that the DNA profile obtained from the swab of the suspected blood taken from the metal pipe was consistent with the DNA profile obtained from the reference sample from defendant. She also stated that the DNA profile obtained from the swab from the clothes iron was consistent with being a mixture of DNA from a minimum of two contributors with one major contributor. She testified that Ms. Walker could not be excluded as the major contributor of the DNA profile and that no conclusions could be made regarding the minor contributor of the DNA profile. Ms. Hamilton further testified that the DNA profile obtained from the swab from the hot surface of the iron was consistent with being a mixture of DNA from a minimum of two contributors. She explained that no conclusions could be made due to the limited nature of the profile.[6] Ms. Hamilton confirmed that there was no evidence connecting defendant to the clothes iron from her analysis.

⁶ Ms. Hamilton confirmed that it is not unusual for a hot surface to possibly destroy DNA material.

Amber Madere, a latent print comparison analyst at the Louisiana State Police Crime Lab, testified as an expert in latent print comparison. She testified that one of the three latent prints obtained from the metal pipe matched those of defendant's left palm.[24]

## V.    Standards of a Merits Review

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[24] *Williams*, 347 So. 3d at 1025–28; R. Doc. 9-1 at 20–24.

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir 2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407–08; *White v. Woodall*, 572 U.S. 415, 425 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ when there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court]

11

precedents." *Id.*; *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). For claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Cullen v. Pinholster*, 563 U.S. 170, 185–86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA *de novo* standards of review. *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299–300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## VI.    Williams's Claims

Williams raises claims of ineffective assistance of counsel and vindictive prosecution.

### A.  Ineffective Assistance of Counsel

Williams claims that his counsel was ineffective when he failed to request a sanity commission despite Williams's alleged inability to understand or participate in presenting a defense. Williams claims that he had previously spent twenty years incarcerated and "could have easily became affected by post traumatic stress

disorder."[25] Williams further claims that his counsel was ineffective in failing to allow him to testify at trial. The State responds that Williams fails to provide any evidence supporting his claims of ineffective assistance of counsel. It further asserts that Williams fails to show that the state courts' denial of relief was contrary to or an unreasonable application of clearly established law as established by the Supreme Court.

Williams raised these claims in his application for post-conviction relief. The state district court found:

> In his first assignment of error, Mr. Williams asserts that his attorney, Eric Goza, provided ineffective assistance of counsel by failing to request a sanity commission despite Mr. Williams' alleged inability to understand or participate in presenting a defense. In support of his claims, Mr. Williams alleges that due to a previous twenty-year term in Louisiana state prison he "could have easily become affected by post-traumatic stress disorder." Additionally, Mr. Williams included a copy of an invoice from a visit to South Central Louisiana Human Services Authority which lists his medication as well as medical conditions, of which notably one states: "F32.1 Major depressive disorder, single episode, moderate." Further, Defendant alleges incidents which they assert should have raised questions of sanity. These include, believing that his attorney was never supposed to speak to the prosecution and that doing so was a betrayal, as well as not understanding how he was convicted by a six-person jury.
>
> It is the finding of this Court that Mr. Williams fails to allege sufficient facts to assert a claim for ineffective assistance of counsel based on counsel's failure to request a sanity commission. Mr. Williams presents very little evidence of mental incapacity that is not conclusory or speculative in nature. The fact Mr. Williams "could easily become affected" by PTSD is insufficient to put counsel on notice of potential mental incapacity. Further a single depressive episode alone is not sufficient to raise questions regarding sanity. While Mr. Williams may have held some erroneous beliefs about trial proceedings, he still was cognizant enough to ask for a different attorney and to make a

---

[25] R. Doc. 3-2 at 17.

threatening gesture towards a juror[1]. There simply is insufficient evidence in either the record or the proceedings itself that indicate that Mr. Gaza's performance was insufficient regarding failure to request a sanity commission. Mr. Williams did not exhibit signs that he was incapable of understanding the proceedings and for that reasons this Court must deny his claim of ineffective assistance for failing to request a sanity commission.

[1] See Defendant's *Proceeding Transcript* p. 252-253.

In his second assignment of error, Mr. Williams asserts that his attorney provided ineffective assistance of counsel by preventing him from testifying. In *Scott v. Hampton*, the Louisiana Supreme Court adopted the test from *Passos-Paternina v. United States* for determining whether a defendant's right to testify has been violated. That test states:

> (1) Absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right.
>
> (2) The court must consider whether the petitioner has waived his right to testify….[The defendant can only] rebut that presumption by showing that his attorney caused him to forego his right to testify [(a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel 'told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent…'[(b) by demonstrating from the record] that those 'specific factual allegations would be credible…'

*State v. Hampton*, 2000-0522, p. 14 (La. 3/22/02); 818 So.2d 720, 729–30, on reh'g in part (June 7, 2002) (citing *Passos-Paternina v. United States*, 12 F.Supp.2d 231 (D.P.R. 1998)). The *Passos-Paternina* test clearly contemplates that "mere conclusory allegations are insufficient" and to rebut the presumption that petitioner knowingly and voluntarily waived his right to testify, the "petitioner must first allege specific facts from which a court could reasonably find that trial counsel 'told [the petitioner] that he was legally forbidden to testify or in some similar way compelled him to remain silent.'" *Passos-Paternina v. United States*, 12

14

F.Supp.2d 231, 239 (D.P.R. 1998)), aff'd, 201 F.3d 428 (1st Cir. 1999). "He must also demonstrate, from the record, that those 'specific factual allegations would be credible.'" *Id.*

While there was a dispute between Mr. Williams and his counsel, this Court does not find that it was so extraordinary as to require inquiry into defendant's right to testify. While Mr. Williams did attempt to seek new counsel, at no time did he indicate that attempt was motivated by an inability to testify, but rather by an erroneous belief that counsel and prosecution were in league together. It is not disputed that Mr. Williams did not testify on his own behalf, which per *Passos-Paternina* creates a presumption of knowing and voluntary waiver which shifts the burden to Mr. Williams to rebut, however there is insufficient evidence in the record to support Mr. Williams' claim that he was not allowed to testify on his own behalf. Mr. Williams' petition only alleges that has was unable to testify but does not point to any specific factual allegations that would be credible, and for that reason this claim must also be denied.[26]

The Louisiana Fifth Circuit Court of Appeal, in finding the trial court's ruling

was not in error, explained as follows:

In his first claim, relator contends counsel was ineffective because counsel did not request a sanity commission despite "seeing signs that [relator] should have been evaluated."

To prove ineffective assistance of counsel, defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under La. C.Cr.P. art. 641, "mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings; and (2) has the ability to assist in his defense by consultation with counsel. State v. Bridgewater, 00-1529 (La. 1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).

---

[26] R. Doc. 9-1 at 78–80, Judgment, 12/6/23 (signed 12/5/23).

In support of his claim, relator refers to the possibility of post-traumatic stress disorder resulting from his prior incarceration for twenty years, his prior treatment for depression, and the stress of the instant trial as evidence of his mental incapacity. Relator also contends the trial court failed to consider the victim's affidavit in which she believed relator needed "mental help."

Relator did not include any medical records or the victim's affidavit in this writ application to support his conclusory assertions. La. C.Cr.P. art. 930.2. Additionally, relator did not point to any specific instances of his alleged mental incapacity either before or during trial.

On the showing made, relator failed to establish counsel was ineffective because counsel did not raise the issue of relator's competency. See State v. Williams, 613 So.2d 252, 256-57 (La. 1992). Therefore, we find no error in the trial court's ruling.[27]

In his second claim, relator contends his attorney prevented him from testifying.

A defendant in a criminal case has the right to take the witness stand and to testify in his own defense. Rock v. Arkansas, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987); State v. Dauzart, 99-3471 (La. 10/30/00), 769 So.2d 1206, 1207 (per curiam). In State v. Hampton, 00-522, (La. 03/22/02), 818 So.2d 720, 729-30, the Louisiana Supreme Court, quoting Passos-Paternina v. United States, 12 F. Supp. 2d 231, 239-40 (D.P.R. 1998) (internal citations omitted), established the following guidelines to be utilized by the courts in determining whether a criminal defendant's right to testify has been violated or waived by his silence during trial:

> (1) absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right;

> (2) the court must consider whether the petitioner has waived his right to testify.... [The defendant can only] rebut that presumption ... by showing that his attorney caused

---

[27] *Williams*, 386 So. 3d at 1194; R. Doc. 9-1 at 126–27.

> him to forego his right to testify [(a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel 'told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent ...' [(b) by demonstrating from the record] that those 'specific factual allegations would be credible[.]'
>
> In this writ application, relator only provided general allegations his attorney prevented him from testifying. Relator did not provide any evidence or documentation that would show there were extraordinary circumstances that should have alerted the trial court to a conflict between counsel and relator regarding his right to testify. Relator also did not allege specific facts that he was legally forbidden to testify or which compelled him to remain silent to rebut the presumption that he waived his right to testify. La. C.Cr.P. art. 930.2; <u>Hampton</u>, *supra*. Accordingly, on the showing made, we find no error in the trial court's ruling.[28]

The Louisiana Supreme Court found Williams failed to demonstrate that he received ineffective assistance of counsel under the *Strickland* standard.[29]

As the state courts acknowledged, the United States Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel in *Strickland*. Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient

---

[28] *Williams*, 386 So. 3d at 1194–95; R. Doc. 9-1 at 127–28.
[29] *Williams,* 395 So. 3d at 863; R. Doc. 9-1 at 232.

performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations and quotation marks omitted).

Accordingly, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 563 U.S. 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The federal courts must look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S.Ct. at 1419 n. 2). Furthermore, the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689–90); *see also Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Because the state courts rejected Williams's claims of ineffective assistance of counsel on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision as to those claims unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). The United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

### 1. Sanity Commission (Claim One)

Williams claims that his counsel was ineffective in failing to request a sanity commission to assess his capacity to understand the proceedings and assist in his defense. In an attempt to show that he was actually incompetent to stand trial, Williams points to an April 2019 visit summary, approximately eight months prior to his trial, which indicates that Williams had "Major depressive disorder, single episode, moderate."[30] He also relies on a May 2, 2019 request by the victim seeking to dismiss the charges in which she stated that Williams needed "mental help," anger management and "medication."[31]

---

[30] R. Doc. 9-1 at 60, South Central Louisiana Human Services Authority Visit Summary, 4/11/19.

[31] *Id.* at 59. The victim testified at trial that she approached the State about dropping the charges because she "felt bad" for Williams's mother, but later reconsidered

A criminal defendant is considered legally competent when he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). Similarly, under Louisiana law, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." La. Code Crim. P. art. 641. Under La. Code Crim. P. art. 643, "[t]he court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed."

Here, Williams fails to present any evidence that demonstrates that counsel had reason to question his capacity to proceed. Even assuming that Williams continued to suffer from major depressive disorder at the time of trial and that defense counsel was aware of that diagnosis, evidence of a diagnosis of mental illness alone is not sufficient to demonstrate a reasonable ground as to the capacity to proceed as a "[a] defendant can be both mentally ill and competent to stand trial." *Mays v. Stephens*, 757 F.3d 211, 216 (5th Cir. 2014); *Osborne v. Cain*, No. Civ.A. 00-1338-A, 2006 WL 3256500, at *9 (W.D. La. Nov. 9, 2006) (the fact that petitioner suffered from schizophrenia was not evidence that he unable proceed). Here, there is simply no evidence that Williams did not understand the proceedings and/or was unable to assist in his defense. To the contrary, the record reflects that Williams

---

because she did not want something similar to happen in the future. R. Doc. 9 at 632, Trial Transcript, 12/11/19.

confirmed that he had conferred with his attorney, although he expressed dissatisfaction with his counsel and requested that a different attorney be appointed to represent him.[32] Apparently recognizing the seriousness of the proceedings, he also made a threatening gesture towards the victim during the trial.[33]

The failure to file a frivolous request for examination by a sanity commission is neither deficient nor prejudicial. *See Mays*, 757 F.3d at 216; *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989) ("There can be no deficiency for failing to request a competency hearing where there is no evidence of incompetency."). For these reasons, the state courts' denial of this claim was neither contrary to or an unreasonable application of clearly established law as established by the Supreme Court. Williams is not entitled to relief as to this claim.

## 2. Right to Testify (Claim Two)

Williams next claims that his counsel prevented him from testifying at trial. "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). A criminal defendant may waive his right to testify, however, if that waiver is knowing, intelligent, and voluntary. *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of the right occurs only if the "'final decision that [the defendant] would not

---

[32] R. Doc. 9 at 588–591, Trial Transcript, 12/11/19. Williams complained that he did not trust defense counsel, he was being "railroad[ed]," and expressed worry that he would be found guilty based on "two lies." *Id.* at 590–91.
[33] *Id.* at 588.

testify was made against his will.'" *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)). When the petitioner alleges that his counsel prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

Here, however, Williams has not offered any actual evidence establishing that he wanted to testify at trial or that counsel prohibited him from doing so. That is a critical flaw. For example, in a similar case in which a petitioner alleged that he had been denied the right to testify by his counsel, the United States Seventh Circuit Court of Appeals explained:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991); *accord Beasley v. Vannoy*, No. 19-9925, 2020 WL 974930, at *17 (E.D. La. Jan. 24, 2020), *adopted*, 2020 WL

972749 (E.D. La. Feb. 28, 2020); *Watson v. Vannoy*, No. 18-10085, 2019 WL 2619917, at *12 (E.D. La. May 21, 2019), *adopted*, 2019 WL 2617231 (E.D. La. June 26, 2019), *certificate of appealability denied*, No. 19-30541, 2020 WL 8615600 (5th Cir. Oct. 9, 2020).

Addressing similar claims, the United States Fifth Circuit has also cited to the *Underwood* holding and "observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic." *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 476) (a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed"). The Fifth Circuit agreed that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable." *Id.* at 628 (citing *Underwood*, 939 F.2d at 475).

Consequently, Williams's mere assertion that defense counsel prohibited him from testifying at trial will not suffice to prove counsel interfered with his right to testify. Furthermore, there is nothing in this record sufficient to prove an actual violation of Williams's right to testify by his trial counsel. While the state trial court did not conduct a colloquy with Williams about the waiver of his right to testify, no evidence indicates that Williams was forced to remain silent at trial. Notably, after the defense rested, Williams requested that his mother be permitted to testify.[34] At

---

[34] R. Doc. 9 at 649–50, Trial Transcript, 12/11/19.

no time, however, did Williams express his own desire to testify.[35] There is simply nothing in this record sufficient to prove any violation of Williams's right to testify.

In addition, Williams has not established that any advice against testifying was unreasonable or prejudicial. A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); *accord United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002); *Amos v. Cain*, No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); *Curtis v. Cain*, No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008). Such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

Because a habeas proceeding is far removed from the context of the actual trial, a federal habeas court has no mechanism available to fairly judge counsel's assessment of his own client at the time and his view of the strength of the prosecution's case as it was presented live. Under such circumstances and in light of the deference that must be accorded to counsel's strategic decisions, the federal court should decline to second-guess counsel's decision to advise petitioner against taking the stand at trial. *See, e.g.*, *Lewis v. Vannoy*, No. 19-10529, 2020 WL 6151108, at *12

---

[35] *Id.*

(E.D. La. June 1, 2020), *adopted*, 2020 WL 6146385, at *7 (E.D. La. Oct. 20, 2020); *Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *13 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011).

In Williams's case, if he were to testify, he would have been exposed to cross-examination regarding his guilt and character, including his prior convictions. In addition, Williams does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided to benefit his defense.

Under these circumstances, it was reasonable for defense counsel to have determined that the prejudice posed by potential cross-examination outweighed any benefit that Williams's testimony might have provided to his defense. Williams has not demonstrated that any alleged advice by counsel to not testify was unreasonable or that the outcome of the trial would have been different but for his counsel's decision to rest the defense without his testimony.

For all these reasons, Williams has failed to establish any deficiency or prejudice under *Strickland* arising from his counsel's representation of him. He is not entitled to relief as to the foregoing claims of ineffective assistance of counsel.

### B. Vindictive Prosecution (Claim 3)

In his final claim, Williams asserts that he was subjected to vindictive prosecution. He claims that, prior to trial, the victim requested to have the charges against him dismissed, yet the charges were not dropped. He further claims that, after he was found guilty, the prosecution sought to have him declared a habitual offender, which resulted in his sentence being increased to twenty-five years. The

State responds that Williams fails to present any evidence demonstrating actual vindictiveness of a presumption of vindictiveness.

Williams raised this claim in his application for post-conviction relief. The state district court found:

> To establish a claim of vindictive prosecution, the defendant must make a showing of either: 1) evidence of actual vindictiveness or 2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. *State v. Miller,* 54,897 (La.App. 2 Cir. 1/22/23, 5–6); 335 So.3d 1165, 1170 (citing *U.S. v. Jenkins*, 537 F.3d 1 (1st Cir. 2008), cert. denied, 555 U.S. 959, 129 S.Ct. 433, 172 L.Ed2d 313 (2008).

> Defendant's evidence of vindictive prosecution consists of the State seeking a minimum sentence of twenty-five (25) years under the multiple offender bill, failing to reach a plea agreement, and not dismissing charges after Williams's victim requested the charges be dropped. None of these incidents rise to a level sufficient to objectively demonstrate actual vindictiveness, furthermore they do not support a presumption of vindictiveness either. When a defendant "raises a presumption of vindictiveness, the prosecutor may rebut the presumption by showing objective reasons for its charges." *Id.* Looking to objective reasons for the charges it is not disputed that Mr. Williams had been incarcerated for a previous crime and that he was in fact a multiple offender. Additionally, the prosecution did attempt to negotiate a plea deal, however, both sides were so far apart on terms that negotiations ultimately did not materialize a plea.[2]  Lastly, the "discretion to charge under the habitual offender law lies with the district attorney." *Id.* (citing *State v. Carter*, 610 So.2d 972, (La. App. 1 Cir. 1992)). Thus, Defendant has not shown evidence sufficient to raise a presumption of vindictiveness, and Defendant's claim of vindictive prosecution must be denied.[36]
> 
> [2] See Defendant's *Proceedings Transcript* p.251. Mr. Williams offered to plead guilty in exchange for a three-year sentence, which was rejected by the State, and the State countered with a double bill for twenty-five years, which Mr. Williams rejected.

In denying Williams's related writ application, the Louisiana Fifth Circuit Court of Appeal found as follows:

---

[36] R. Doc. 9-1 at 80–81, Judgment, 12/5/23.

In his third claim, relator contends the State's decision to file an habitual offender bill of information against him was based on his refusal of the State's plea offer. Relator also avers the victim requested the State to drop the charges against him, but the State denied this request without any reason.

A vindictive prosecution is one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right and thereby violates a defendant's Fifth Amendment right to due process. United States v. Goodwin, 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). The defendant bears the burden of proving prosecutorial vindictiveness. State v. Dauzart, 07-15 (La. App. 5 Cir. 5/15/07), 960 So.2d 1079, 1084, writ denied, 07-1269 (La. 12/14/07), 970 So.2d 532. In determining whether there has been prosecutorial vindictiveness, the court examines the State's actions in the context of the entire proceeding. If, to a reasonable mind, the filing of the habitual offender bill can only be explained by a desire to deter or punish the defendant's exercise of legal rights, the events in the case will create a presumption of vindictiveness. Id. Where the government's conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness because a presumption will not apply. State v. Poche, 05-1042 (La. App. 3 Cir. 3/1/06), 924 So.2d 1225, 1235. A mere opportunity for vindictiveness does not suffice. Id.

Here, the victim was relator's girlfriend, who he beat with a metal pipe and a belt with a metal buckle and burned her with an iron. Williams, 347 So.3d at 1026. At trial, the victim admitted she initially requested that the State drop the charges against relator; however, she changed her mind because she did not want this "to happen to [her] again." At defendant's sentencing, the victim made the following victim impact statement:

> So whatever he get, he deserve it, and I think you should give him the max because he needs it because cause what he done to me, I would never be the same in my life again.
>
> He don't deserve leniency. He don't at all because he didn't have leniency for me when he was breaking my fingers and burning me with that iron. He didn't have any for me. So whatever you give him, your Honor, he deserve it.

Thus, relator is hard-pressed to show how the victim's initial consideration to drop the charge bolsters his claim of prosecutorial vindictiveness.

28

Regardless, the district attorney has discretionary power to charge a defendant under the habitual offender law. State v. Dorthey, 623 So.2d 1276, 1279 (La. 1993); see also La. C.Cr.P. art. 61. The district attorney's use of the habitual offender law "provides an ancillary sentencing factor designed to serve important and legitimate societal purposes." Dauzart, 960 So.2d at 1085. The use of the habitual offender law alone does not create a presumption of prosecutorial vindictiveness. Id.

In the instant case, relator had a prior conviction for armed robbery, and thus, was a second-felony offender under the habitual offender law. As the trial court pointed out, the State and relator engaged in plea negotiations but were unable to reach an agreement. Therefore, on the showing made, we find no error in the trial court's denial of this claim.[37]

The Louisiana Supreme Court denied Williams's writ application, finding that he failed to meet his post-conviction burden of proof under La. Code Crim. P. art 930.2.[38]

A vindictive prosecution is one in which the prosecutor increases the severity or brings additional charges against the defendant for the exercise of his procedural rights. *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998); *United States v. Ward*, 757 F.2d 616, 619–20 (5th Cir. 1985). A defendant establishes vindictive prosecution either by: (1) producing evidence of actual vindictiveness; or (2) demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness *Id.* at 376. The petitioner must show actual vindictiveness by the prosecution, exceeding the motive merely to prosecute the crime committed. *Ward*, 757 F.2d at 620. A petitioner

---

[37] *Williams*, 386 So. 3d at 1195–96.
[38] *Williams*, 395 So. 3d at 863; R. Doc. 9-1 at 231–32.

may create a "presumption of unconstitutional prosecutorial vindictiveness" only by showing the "substantial and realistic likelihood" of a punitive motive. *Id.* at 619. Bare allegations of vindictive prosecution are not sufficient to support a claim. *United States v. Lacey*, 91 F. App'x 939, 2004 WL 413215 at *1 (5th Cir. March 3, 2004) (citing *Neal*, 141 F.3d 207 at 214).

Initially, the record shows that, approximately one week after the crime, the victim executed a request for dismissal of the charges.[39] At trial, the victim explained that she later decided she did not "ever want [this] to happen to [her] again. So [she] decided to approach the District Attorney's Office and pursue the charges."[40] At sentencing, the victim explained the impact the crime against her had on her life and asked the court to impose the maximum sentence.[41] Thus, the victim's actions as a whole do not support Williams's claim of vindictive prosecution.

Further, the fact that the State continues to pursue charges after Williams rejected a plea offer does not amount to prosecutorial misconduct or vindictive prosecution. *See United States v. Ward*, 757 F.2d 616, 620 (5th Cir. 1985) (to be vindictive, the State's actions must exceed the mere motive to prosecute the crime committed); *see also, United States v. Molina*, 530 F.3d 326, 332 (5th Cir. 2008) (citing *United States v. Batchelder*, 442 U.S. 114 (1979)) (prosecutors generally have discretion to decide who to prosecute, which offense to charge, and what measure of punishment to seek). A prosecutor also has discretion to pursue additional charges

---

[39] R. Doc. 9-1 at 59, Request for Dismissal of Charges, 5/2/19.
[40] R. Doc. 9 at 632, Trial Transcript, 12/11/19.
[41] *Id.* at 330–31, Sentencing Transcript, 3/9/20 (misdated 4/25/19).

than those originally filed because such charges "may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* As a result, a prosecutor's decision to make good on a threat to charge a defendant as a recidivist who refuses to enter a guilty plea does not violate due process. *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir.1996) ("It is clear that due process is not violated when a state prosecutor exercises his discretion and charges a defendant as a habitual offender for refusing a plea bargain.") (citing *Bordenkircher*, 434 U.S. at 357). Here, the multiple offender bill was a charge "on which [Williams] was plainly subject to prosecution." *Id.*

In this case, Williams fails to establish either direct or presumptive vindictiveness by the prosecution. The state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. Williams is not entitled to relief as to this claim.

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** that Arthur Williams's application be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.

28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th

Cir. 1996) (en banc).

New Orleans, Louisiana, this 30th day of September, 2025.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**